1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHARLES SAXTON,
INMATE #21143064,

                                    Plaintiff,

          vs.

SAN DIEGO COUNTY SHERIFF'S
DEPARTMENT, et al.,

                                    Defendants.

Case No.:  22-cv-0562-RBM-JLB

**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT WITHOUT PREJUDICE PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

Plaintiff Charles Saxton, an inmate detained at the George Bailey Detention Facility in San Diego, California, is proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  Plaintiff claims he has been denied clean and safe living conditions and adequate medical and dental care.  (*Id*. at 3-5.)

Plaintiff has not prepaid the civil filing fee required by 28 U.S.C. § 1914(a) and has instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a).  (ECF No. 2.)

**I.     Motion to Proceed IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of

1

$402.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a failure to prepay the entire fee only if leave to proceed IFP is granted pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).  Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. § 1915(b)(1) & (4).  The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2).  Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed.  *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Plaintiff has submitted a copy of his Prison Certificate which indicates that during the six months prior to filing suit Plaintiff had an average monthly balance of $0.01 and average monthly deposits of $91.67, and an available balance of $0.08 in his account at the time he filed suit.  (ECF No. 2 at 6-7.)

The Court **GRANTS** Plaintiff's Motion to Proceed IFP and declines to impose an initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1) because his prison certificate indicates he may have no means to pay it.  *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil

---

[1]  In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.")  The Court directs the George Bailey Detention Facility Watch Commander, or their designee, to collect the $350 filing fee required by 28 U.S.C. § 1914 and to forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II.   Screening pursuant to §§ 1915(e)(2) & 1915A(b)

### A.   Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)); *see* 28 U.S.C. § 1915(h) (defining "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.")

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).")  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009),

3

quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B.    Plaintiff's Allegations

In count one of the Complaint Plaintiff claims a denial of his right to medical care. (ECF No. 1 at 3.) He states he was arrested on November 3, 2021, and sent to the San Diego County Central Jail where he informed medical staff on arrival he had asthma and a broken left clavicle. (*Id.*) He filed numerous requests for an inhaler but was not provided one until November 13, 2021. (*Id.*) He informed the medical department he "was on state disability" and had a November 8, 2021, medical appointment at UCSD hospital, but was not permitted to make his appointment despite multiple requests. (*Id.*) Plaintiff was transferred to the George Bailey Detention Facility where he received an x-ray on November 22, 2021, but was not seen by a doctor as a follow up to the x-ray until he was transferred to the Vista Detention Facility in January 2022. (*Id.*)

Plaintiff claims in count two of the Complaint he was denied his right to adequate dental care. (*Id.* at 4.) He states he has filed multiple requests for dental care and antibiotics

while in the custody of the San Diego County Sheriff's Department and requested to be taken to the emergency room due to pain, but has only been seen by a dentist twice. (*Id*.)

In count three of the Complaint Plaintiff claims a violation of his right to clean and safe living conditions. (*Id*. at 4.) He alleges he complained in December 2021 while at the George Bailey Detention Facility about orange water and black mold but did not receive a response until his transfer back to George Bailey from the Vista Detention Facility in March 2022. (*Id*.) He alleges the conditions at the George Bailey Detention Facility include overcrowding, poor ventilation, missing food, and improperly functioning toilets, sinks and showers. (*Id*.) He claims there are inadequate Covid-19 protections in place in his dormitory where 36 inmates sleep three to a rack less than six feet apart. (*Id*.) He claims his right to a speedy trial has been violated and that he has lost state housing and employment benefits because he has not been allowed to go to court even though he is fully vaccinated. (*Id*.) He states that: "I still have dental pain and a broken clavicle" and "we are locked down for up to three days without phones at a time. Deputies constantly state 'I'm a piece of shit.' I took a plea deal on a crime I did not do just to leave the custody and psychological pain the Sheriff's Department has caused." (*Id*.)

Plaintiff names as Defendants the San Diego County Sheriff's Department which he claims failed to take him to doctor appointments and slandered him, the San Diego County Sheriff's Medical Staff which he claims misread his x-ray "causing me to have a cat scan and surgery after missed appointments," the San Diego County Sheriff's Dentist which "refused to see or prescribe medication," and the San Diego County Sheriff's Maintenance which failed to "provide clean and safe living conditions." (*Id*. at 2.) He seeks monetary damages and an injunction preventing denial of medical and dental care. (*Id*. at 7.)

## C.   Analysis

The principles underlying the Eighth Amendment's prohibition on the infliction of cruel and unusual punishment "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 101-03 (1976). However, "[i]t is obduracy and wantonness, not inadvertence or error in good

faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[A]n inadvertent failure to provide medical care," allegations that "a physician has been negligent in diagnosing or treating a medical condition," or "medical malpractice" do not state an Eighth Amendment claim. *Estelle*, 429 U.S. at 105-06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

The Eighth Amendment provides that "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). However, with respect to allegedly unconstitutional conditions of confinement, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson*, 501 U.S. at 298. Second, "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.*, quoting *Wilson*, 501 U.S. at 302-03. The deliberate indifference prong of an Eighth Amendment violation "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). To plausibly allege deliberate indifference, "the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004), quoting *Farmer*, 511 U.S. at 837.

The Complaint in this action details events beginning when Plaintiff was arrested and ending after he accepted a plea deal. While Plaintiff was a pre-trial detainee an objective test for deliberate indifference under the Due Process Clause of the Fourteenth

Amendment applied rather than a subjective test under the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting that the Due Process Clause of the Fourteenth Amendment is applicable to claims of pre-trial detainees rather than the Eighth Amendment because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.")  Under the objective reasonableness standard, Plaintiff must "prove more than negligence but less than subjective intent - something akin to reckless disregard." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).  To state a 42 U.S.C. § 1983 claim for inadequate medical care or unconstitutional conditions of confinement, a pre-trial detainee must plausibly allege that: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused plaintiff's injuries." *Id.*

The only Defendants named in the Complaint are the San Diego County Sheriff's Department and its medical, dental and maintenance departments.  (ECF No. 1 at 2.) Plaintiff cannot state a § 1983 claim against the San Diego County Sheriff's Department or its subdivisions because those entities are not "persons" within the meaning of § 1983. *See Tsao*, 698 F.3d at 1138 ("To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law."); *Johnson v. Cty. of San Diego*, 18cv1846-LAB (RBB), 2020 WL 5630503, at *3 (S.D. Cal. 2018) ("Local law enforcement departments, like the San Diego Sheriff's Department, municipal agencies, or subdivisions of that department or agency, are not proper defendants under § 1983.")

The Court will liberally construe the Complaint as attempting to state a claim against the County of San Diego rather than the San Diego County Sheriff's Department. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that when a plaintiff appears pro se, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt with respect to what claims are raised); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (noting that the rule of liberal construction is "particularly important" in civil rights cases). In order to state a claim against the County of San Diego, Plaintiff must allege that: (1) he was deprived of a constitutional right, (2) the County has a policy, custom or practice which amounted to deliberate indifference to that constitutional right; and (3) the policy, custom or practice was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011), citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.") Municipal liability may be shown when an employee who committed the constitutional violation was "acting pursuant to an expressly adopted official policy, longstanding practice or custom, or as a final policymaker." *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014), citing *Monell*, 436 U.S. at 694. Municipal liability arising from an alleged failure to train jail staff requires allegations "that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Rodriquez v. City of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018), quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

Plaintiff has not identified in the body of the Complaint a custom, policy or practice allegedly adhered to with deliberate indifference to his constitutional rights. Allegations that medical and dental care were delayed, by themselves, fails to state a municipal liability

claim because "proof of a single incident of unconstitutional activity," or even a series of "isolated or sporadic incidents" will not give rise to § 1983 municipal liability. *Grant v. Cty. of L.A.*, 772 F.3d 608, 618 (9th Cir. 1996); *Monell*, 436 U.S. at 691 (for an unwritten policy or custom to form the basis of a claim, it must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice). Liability based on custom, practice or policy "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Facts regarding the specific nature of the policy, custom or practice are required, as merely stating the subject to which the policy relates, such as medical care, is insufficient. *Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (a complaint with conclusory allegations of a municipal policy fails to state a claim where it does not "put forth additional facts regarding the specific nature of this alleged policy, custom or practice.")

If Plaintiff wishes to proceed with a claim against the County of San Diego, he must set forth factual allegations which identify a San Diego County custom, policy or practice and plausibly allege a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Collins v. Cty. of Harker Heights*, 503 U.S. 115, 123 (1992); *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (in order to impose liability on a local government under § 1983 a plaintiff must plead and prove that an "action pursuant to official municipal policy" caused their injury.) Otherwise, he must allege a failure to train or that an "individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Rodriquez*, 891 F.3d at 802-03.

If, instead, Plaintiff wishes to name one or more individuals as Defendants he must set forth factual allegations identifying individual acts or omissions by such persons related to his medical or dental treatment or conditions of confinement which resulted in a constitutional violation. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities

9

of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."); *Gordon*, 888 F.3d at 1125 (in order to state a § 1983 claim for inadequate medical care or unconstitutional conditions of confinement a pre-trial detainee must plausibly allege that: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused plaintiff's injuries.")   Allegations of differences of opinion over proper medical care, inadequate medical treatment, medical malpractice, or even gross negligence by themselves do not rise to the level of an Eighth or Fourteenth Amendment violation. *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or treating a medical condition" does not amount to deliberate indifference), quoting *Estelle*, 429 U.S. at 105-06 (holding that "an inadvertent failure to provide medical care," allegations that "a physician has been negligent in diagnosing or treating a medical condition," or "medical malpractice" do not state an Eighth Amendment claim as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Toguchi*, 391 F.3d at 1058 (a disagreement over the necessity or extent of medical treatment does not show deliberate indifference); *Gordon*, 888 F.3d at 1124-25 (a pre-trial detainee must show more than lack of due care or negligence).

In addition to denial of medical and dental care, Plaintiff alleges the conditions at George Bailey include overcrowding, poor ventilation, missing food, and improperly functioning toilets, sinks and showers. (ECF No. 1 at 6.)  He claims there are inadequate Covid-19 protections in place in his dormitory where 36 inmates sleep three to a rack less than six feet apart. (*Id*.)  He claims his right to a speedy trial has been violated and he has lost state housing and employment benefits because he is not allowed to go to court athough he is fully vaccinated. (*Id*.)  He states: "I still have dental pain and a broken clavicle" and

"we are locked down for up to three days without phones at a time.  Deputies constantly state 'I'm a piece of shit.'  I took a plea deal on a crime I did not do just to leave the custody and psychological pain the Sheriff's Department has caused."  (*Id*.)

"Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care and personal safety." *Johnson*, 217 F.3d at 731.  Although "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment," the temporary imposition of such conditions does not state a claim absent allegations of a risk of harm. *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1314-15 (9th Cir. 1995).  The allegations in the Complaint regarding the conditions of confinement fail to state a claim because they lack detail regarding their duration and severity or whether and to what extent they have affected Plaintiff.  *Anderson*, 45 F.3d at 1314-15; *Johnson*, 217 F.3d at 731 ("The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred."); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.")  The allegation of verbal abuse also fails to state a claim.  *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse does not state a constitutional deprivation under § 1983).

Finally, to the extent Plaintiff intended to present a claim for a violation of his speedy trial right or otherwise challenge his plea or conviction, he cannot proceed with such a claim in this action under 42 U.S.C. § 1983 as such claims sound only in habeas.  Violations related to the "circumstances" of a prisoner's confinement are brought in a civil rights action under 28 U.S.C. § 1983, while constitutional challenges to the validity or duration of a prisoner's confinement must be raised in a petition for federal habeas corpus under 28 U.S.C. § 2254.  *Muhammad v. Close*, 540 U.S. 749, 750 (2004), citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc) ("The Court has long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may

not be brought in a § 1983 action."), citing *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). A claim based on "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," is not cognizable under § 1983 unless Plaintiff "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

Accordingly, the Court *sua sponte* dismisses the Complaint based on a failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A.

### D.   Leave to Amend

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim if he can and if he wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## III.   Conclusion and Orders

Good cause appearing, the Court:

1.   **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2.   **ORDERS** the Watch Commander of the George Bailey Detention Facility or any subsequent "agency having custody" of Plaintiff to collect from Plaintiff's trust account the $350.00 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3.   **DIRECTS** the Clerk of Court to serve a copy of this Order on the Watch Commander, George Bailey Detention Facility, 466 Alta Road, San Diego, California 92158.

22-cv-0562-RBM-JLB

4.      **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted in this Order.  The Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in the Amended Complaint will be considered waived.  *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

If Plaintiff fails to timely file an Amended Complaint, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED.**

Dated:  May 23, 2022

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE